Filed 2/25/13  In re T.J. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.J., a Person Coming Under the Juvenile Court Law. | B242293<br>(Los Angeles County Super. Ct.<br> No. CK88336) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>K.H.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Margaret Henry, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

John Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Stephen D. Watson, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

K.H. ("mother") appeals from the dependency court's orders made at a six-month review hearing under Welfare and Institutions Code section 366.21, subdivision (e)[1] denying her request that her son, T.J. (son), a dependent of the court, be returned to her custody. Mother contends substantial evidence does not support the finding that returning son to her custody created a substantial risk of detriment to the child. We conclude substantial evidence supports the finding. Accordingly, we affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURE

Son was born in September 2009 to mother and T.J., senior ("father"),[2] who lived together in Louisiana. Mother had a long history of mental and emotional problems, including major depression disorder and homicidal ideation. She displayed anti-social behavior and a violent temper.[3] Mother and father engaged in physical altercations during the pregnancy. On one occasion, she used a knife and on another, she hit father on the head with a glass. When son was 13 days old, she bit father. With a warrant pending for her arrest for domestic violence, mother left Louisiana with son and moved to California.[4]

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    Father was found to be son's presumed father.

[3]    As a child, she intentionally inflicted harm on her half-siblings, was defiant at home, was expelled from schools, engaged in prostitution, and assaulted a schoolmate with brass knuckles. She was adjudged a delinquent ward of the court and placed in juvenile hall. When released, she was placed in a community placement. She gave birth to son at age 20.

[4]    The warrant remained outstanding during the proceedings.

In California, she entered into a relationship with a man who beat her while she held son. Mother "'smacked'" and "'pushed'" son. Mother had difficulty functioning due to her ongoing depression. She did not want to engage with son. From June 2010 to May 2011, the Department of Children and Family Services (Department) provided the family with family preservation services, including therapy for mother's mental health issues, under a voluntary family maintenance case. Mother's attendance and participation were poor, and she did not meet the goals of treatment.

On June 12, 2011, mother left son with maternal grandfather because she was afraid she would hurt son. She exhibited depressive symptoms of sadness, irritability, and lack of motivation. The Department detained son from parental custody and placed him in shelter care. Mother denied she abused son or had mental health issues.

In July 2011, mother entered a program of anger management, domestic violence, and parenting counseling. She completed the program on October 5, 2011.

On October 7, 2011, son was declared a dependent of the court under section 300, subdivision (a), based on a sustained allegation he suffered or there was a substantial risk he would suffer serious harm inflicted nonaccidentally by mother, and subdivision (b), based on sustained allegations he suffered or there was a substantial risk he would suffer serious harm as a result of mother's failure to adequately supervise or protect him, mother's willful or negligent failure to provide him with the necessities of life, and mother's inability to provide regular care due to her mental illness.[5]

For disposition, the dependency court found mother "didn't agree with what anybody else was saying, which leads me to believe there are some current mental health problems. . . . [The reports] show domestic violence but not the way she was saying, every month and a broken arm and all these things. It's not there. So I think there are current mental health problems, based on observations and listening to her testimony."

---

[5]    The dependency court also sustained an allegation under section 300, subdivision (b) that father failed to protect son adequately in that he knew of mother's mental problems and allowed her to reside in the home.

3

Custody was taken from the parents. Reunification services were ordered for mother. Because he was a noncustodial parent, enhancement, rather than reunification, services were ordered for father. Mother was ordered to participate in individual counseling to address her case issues, including anger management, and to submit to a psychiatric evaluation. Mother was granted monitored visits. The court advised the parents that "[b]efore there can be reunification, parents will have to demonstrate the ability to meet the physical and emotional needs of the child and the ability to provide stable and appropriate housing. [¶] . . . And you are advised that failure to participate regularly and make substantive progress in treatment programs may result in the termination of reunification services on April 6, 2012."

In late October 2011, mother committed vandalism (Pen. Code, § 594, subd. (a)) of maternal step-grandmother's vehicle.[6] Imposition of sentence was suspended on condition she serve 14 days in county jail, have no contact with the victim, complete 52 weeks of domestic violence counseling, and pay fines, fees, and assessments.

Mother re-enrolled in her outpatient program, but her progress was only "fair," because she did not attend sessions regularly. On occasions, she violated the rules of her monitored visitation, and she frequently argued with son's caretakers about son. She refused to allow a monitor to monitor her visits and, on two occasions, took son away without informing the caretakers. Mother continued to deny she abused son or had mental health issues.

The psychiatrist who evaluated mother for the dependency court concluded: (1) reunification would be the ultimate goal, provided mother complied with psychotherapy and all the Department's recommendations; (2) her visits could become unmonitored if mother remained compliant with all services; (3) mother was at increased risk for a recurrence of Major Depression, although she did not currently meet criteria for any DSM-IV diagnosis; (4) and mother would benefit from regular psychotherapy.

---

**6** Son lived in the home of maternal step-grandmother and maternal grandfather. Mother was hostile toward maternal step-grandmother.

A six-month review hearing under section 366.21, subdivision (e) was held on April 20, 2012. The Department recommended son be returned to father's custody in Louisiana, and mother requested son be returned to her custody. Finding that "[r]eturn of the child to the father or release of the child to the father would not be detrimental to the safety, protection, physical or emotional well-being of the child," the dependency court released son to father in Louisiana pursuant to the Interstate Compact on the Placement of Children under a home-of-parent father order. The Department was ordered to provide family maintenance services for father and to continue family reunification services for mother. Mother was awarded visits, with the court stating, "hopefully, by the end of this case, she'll be entitled to joint custody." The court stated: "The father is equally entitled to custody of the child. It's not just a mother who is entitled to custody. [¶] And [mother], you took off from Louisiana. I understand there were domestic violence issues. But he was still entitled to equal custody. There wasn't any kind of an order where you can cut the father out of the child's life. And now we're at a stage where he's definitely safe to be released to the father. And you still have to . . . overcome some setbacks. It's mostly that vandalism charge. [¶] But reading the report of the 730 evaluator[,] . . . it seems to be pretty thorough. And it was not recommending release to you at this stage. I could not release him to you at this stage. I can release him to the father. Under the law, that is what I should do." The court stated, "[I] have found that release to [mother] is not safe because she hasn't made enough progress with her mental health and anger issues."

## DISCUSSION

Mother contends substantial evidence does not support the finding under section 366.21, subdivision (e) that returning son to her custody created a substantial risk of detriment to the child. We disagree with the contention.

We review custody determinations for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Custody rulings are not disturbed in a dependency proceeding unless they are arbitrary, capricious, or patently absurd. (*Ibid.*)

There is no abuse of discretion where substantial evidence supports the order. *(In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.) In determining whether an order is supported by substantial evidence, "we look to see if substantial evidence, contradicted or uncontradicted, supports [it]. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. *(In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 366.21, subdivision (e) provides: "At the review hearing held six months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care as determined in Section 361.49, whichever occurs earlier, . . . the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. At the hearing, the court shall consider the criminal history . . . of the parent or legal guardian subsequent to the child's removal to the extent that the criminal record is substantially related to the welfare of the child or the parent's or guardian's ability to exercise custody and control regarding his or her child . . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental."

Substantial evidence supports the finding that the return of custody to mother would create a substantial risk of detriment. Mother had a history of harming and

6

creating a risk of harm to son by her inability to manage her anger and by engaging in violent domestic altercations in the child's presence.  Participation in an anger management and domestic violence program, which she completed in early October 2011, was not effective in rehabilitating her.  In late October, she acted out her anger toward maternal step-grandmother, in whose home son resided, by committing vandalism.[7]  Mother re-enrolled in treatment programs but did not attend regularly.  Her failure "to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental."  (§ 366.21, subd. (e).)  The psychologist who evaluated her in the month prior to the hearing concluded she was not sufficiently rehabilitated to be reunified with son.  Mother continued to deny she harmed son or had mental health issues.  She had not succeeded in working her way up to unmonitored visits.  This is sufficient evidence that return of son to mother's custody would create "a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child[.]"  (See § 366.21, subd. (e).)

The custody issue was scheduled to be reviewed again in six months.  We conclude the dependency court's decision that mother needed to achieve more progress in rehabilitation before son could safely be in her care was supported by substantial evidence and not an abuse of discretion.

Mother reargues the evidence and asks us to reweigh it.  This we will not do.  Our role is to determine whether substantial evidence supports the order.  In this case, ample substantial evidence supports the order.

---

[7]     The dependency court must consider the parent's subsequent, relevant criminal history.  (§ 366.21, subd. (e).)

## DISPOSITION

The order is affirmed.

KRIEGLER, J.

We concur:

ARMSTRONG, Acting P. J.

MOSK, J.